# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Criminal No. 07-008(4) (JNE-JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **James Charles Weekly,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came before the undersigned for a hearing on July 25, 2007. W. Anders Folk, Assistant United States Attorney, appeared for the Government. Kevin M. O'Brien, Esq., appeared on behalf of defendant Charles Weekly. This case is scheduled to be tried before U.S. District Court Judge Joan N. Ericksen and has been referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Through a motion for a *Franks* hearing (Doc. No. 116), Mr. Weekly (Weekly) challenged the truthfulness of some allegations in the affidavit accompanying a search warrant. He argued that, if these allegations prove to be false, then the search warrant is not supported by probable cause and fruits of the search should be suppressed  By a report on June 13, 2007, this Court found that Weekly had made a threshold showing and recommended a hearing. The report did not discuss, should the allegations prove false, whether the affidavit would have enough remaining truthful allegations to supply probable cause. By an order on July 9, 2007, the district court adopted the June 13 report, and referred this matter back to this Court for further proceedings.

I.   BACKGROUND

The events relevant to this dispute were first explored at the hearing before this Court on May 22, 2007. As evidence from this hearing is described in the June 13 report and recommendation, the warrant arose out of an incident on March 21, 2006. Trooper Lawrence Brown, of the Wisconsin State Patrol, stopped defendant James Weekly for speeding. The encounter was captured by an in-squad video recorder.

While searching Weekly=s car, Brown instructed Weekly to stay by the front of the squad. Because Weekly was sitting or standing by the front bumper of the squad, the video does not usually show the position of Weekly=s hands. When Brown discovered illegal drugs, he ordered Weekly to the ground, who complied. The video appears to show that Weekly had nothing in his hands at the time.

Because the video recorder was mounted at the top of the squad=s windshield, and Weekly was on the ground by the bumper, the video does not show Weekly there. Another officer started to restrain Weekly, and Brown yelled, AOkay, he=s on the phone. Put the phone down!@ The video then shows Brown taking a telephone and placing it on Weekly=s car. It does not show, however, from where Brown took the phone.

Several more officers arrived on the scene afterwards. The video shows that Brown made statements to those officers about how Weekly was using his telephone at the time of the arrest.

At the May 22 hearing, Brown testified that Weekly was shouting into his telephone at the time of the arrest. If this testimony is true, the shouting was not captured by the audio of the video recording.

Later during the day of the arrest, a search warrant application was prepared by Investigator Cathy Borgschatz (Borgschatz) of the St. Croix County Sheriff=s Department.  According to the affidavit with the application, Weekly used his telephone to contact Aan unknown person@ just before the arrest.  The affidavit also states that the telephone may have been used for drug trafficking.  Based on this information, a judge granted a search warrant authorizing seizure of the telephone and a search of its records.

The June 13 report and recommendation determined, from these facts, that there was an issue whether Weekly had actually used the telephone.  It also noted that, if Weekly completed a telephone call near the time of arrest, the call records on the telephone itself could verify this fact.

These matters were further examined at the hearing before this Court on July 25, 2007.  This Court received testimony from Borgschatz.  She went to the site of the arrest only moments after it occurred and spoke directly to Brown about what happened.  Believing his account was true, she then described the procedures she followed to obtain the search warrant, including her execution of the affidavit.  She admitted at the hearing that she should have said in the affidavit the defendant *"may* have made contact with an unknown person telling them of the arrest," and not that he "made contact."  She admitted that neither she nor Brown heard what words Weekly used while on the cell phone.  She admitted that her assumption that he "made contact" was born out of conversations she had with Brown and their collective experience that led them to believe he made or was attempting to make contact with someone regarding the drugs found and the arrest.

As part of the preparation for the July 25 hearing, Borgschatz checked the telephone to see whether its call records would confirm its use immediately before the arrest.  She testified that the telephone itself lacked records that would allow her to determine when outgoing calls were placed.

3

The Government also presented evidence about Weekly=s appearance at a preliminary hearing before a Wisconsin state district court on March 23, 2007, two days after his arrest. Both Brown and Borgschatz testified at the hearing. Counsel for Weekly raised some concerns about the telephone, questioning Brown as follows.

> Q: [W]hen you discovered this cocaine in the rear door panel, did he make a phone call?
>
> A: My back was to him. I=m not certain when the phone call started. But as he was being put into custody, he was frantically talking on his phone. I could not hear the verbiage.
>
> Q: Okay. Frantically? What did you mean by that?
>
> A: The look on his face, and I believe he was calling somebody for assistance.

Counsel for Weekly later questioned Borgschatz as follows.

> Q. Did you receiveCdid you take into possession any other items of potential evidence?
>
> A. I have his phone.
>
> Q. Okay. Have you operated the phone in such a way as to obtain any numbers that are saved?
>
> A. I was going to obtain a search warrant. I haven=t looked at it yet . . . .

This inquiry led to the following exchange between counsel and the judge.

> Defense Counsel: [M]y client is indicating that he does not object to the officer accessing the phone and he=s asking that any numbers that are retained in the phone be provided to him, so he can call his family members to try to raise bail.
>
> Prosecution Counsel: That=s fair. We=ll do that by search warrant to start with just to be careful, but we=ll do that this morning. . . .

| | |
|---|---|
| Court: | You understand what he is asking? |
| D: | He=s looking for relatives= phone numbers. |
| P: | We=ll do that this morning, get a search warrant into the Court and get that business taken care of. |
| C: | You know what he means, you get into that stuff you kind of forget the phone number. |
| P: | Sure, a man needs to have the numbers.  He=s entitled to raise bail.  No doubt about that. |

Based on this exchange, the Government argues that Weekly consented to a search of the telephone, which supplies an independent, lawful basis for the search.  For this reason, it asserts that concerns about the lawfulness of the search warrant may be immaterial.

## II.   ANALYSIS

Weekly argues that when officers obtained the search warrant for his telephone, there were false statements in the search warrant affidavit.  He argues that when these allegations are taken as false, any remaining truthful allegations do not supply probable cause for the warrant.

The underlying principle at stake here is that, for a search warrant to comport with the Fourth Amendment, a detached and neutral magistrate must find it is supported by probable cause.  *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967).  Probable cause exists if a reasonable person would find a fair probability of incriminating evidence on the premises to be searched.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  When examining allegations in the search warrant affidavit, a court uses a common sense approach rather than making a hypertechnical inquiry.  *United States v. McAtee*, 481 F.3d 1099, 1102 (8th Cir. 2007).

Where a defendant seeks to suppress fruits of a search warrant because it was procured with an affidavit containing false statements, the defendant must prove two elements by a preponderance of the evidence.  The defendant must show the affiant either knowingly, or with reckless disregard for the truth, included false allegations in the search warrant affidavit.  The defendant must also show that when false information is omitted from the search warrant affidavit, it does not support a finding of probable cause.  *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006).

Upon full review of all the evidence and testimony, there is no indication that Borgschatz, in her preparation of the affidavit, intentionally or recklessly included falsehoods in the search warrant affidavit.  By this finding the Court does not ignore her admission that she should have said he Amay have made@ rather than Amade contact."  But the reality is, no one heard specifically what he was saying on the phone or to whom.

Instead, the court starts by finding Brown=s testimony that he saw Weekly using the cell phone at the arrest scene persuasive.  His account is consistently given and it is not directly contradicted by the video.  Frankly, the picture the video paints is not complete, but Brown's reactions appear to be spontaneous and not staged. Borgschatz obtained information from Brown on the scene, and the record does not suggest she had any reason to doubt him.  They both made assumptions that may or may not be false and the Court agrees that the language should have more accurately reflected what was heard or not heard, but Weekly does not meet his burden of proof on this element.

Even assuming there were intentional falsehoods in the search warrant affidavit, and excising the Amade contact@ language, the other issue is whether the remaining allegations supply sufficient probable cause.  Those allegations indicate that Weekly was arrested with four kilograms of cocaine in his possession, and that he used a cell phone in his possession at the crime scene just before being

arrested. The affidavit also says that the affiant believes Weekly may have been using the cell phone in commission of the crime of drug trafficking.

An analogous case is a decision from the District of Kansas, *United States v. Wiseman.* 158 F.Supp.2d 1242 (D.Kan. 2001). In this case, officers stopped the defendant in his truck. They found illegal drugs and a telephone inside. Officers then obtained a search warrant for the telephone records, alleging facts about the defendant=s illegal drug trafficking, as well as that telephones are Acommonly used@ in such crimes. *Id.* at 1246, 1249. Emphasizing a common sense approach to the allegations in the affidavit, the court found it was reasonable to expect that records of drug contacts would be found on the telephone. For this reason, it held that the search warrant was supported by probable cause. *Id.* at 1249.

The current case is distinguishable because the search warrant affidavit does not allege any general facts about the use of telephones in drug trafficking. But it is reasonable in this day and age of constant cell phone use to infer that incriminating evidence will be found on the cell phone of a person who has a large quantity of illegal drugs and who is observed using that phone just prior to his arrest by the State Patrol. This Court concludes that, if only the unchallenged allegations in the affidavit are considered, these still provide probable cause for the search warrant.

Notwithstanding this outcome, it is worth noting a few concerns on the issue of consent. The transcript of the preliminary hearing shows that officers did not intend to rely on Weekly=s consent as justification to search the telephone. That record further suggests that Weekly may have only consented in order to contact his relatives and make arrangements for bail. Although these concerns may raise issues about the validity of the consent, this Court concludes the search warrant is sound and so it is not necessary to examine consent.

### III.     CONCLUSION AND RECOMMENDATION

After further hearing on the truthfulness of the allegations in the search warrant affidavit, this Court finds that the affiant did not intentionally or recklessly include falsehoods in the affidavit.  In the alternative, when the unchallenged allegations are considered, they supply probable cause for the search warrant.  Being duly advised of all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT** fruits from the search warrant need not be suppressed.

Dated this 16th day of August, 2007.              s/Jeanne J. Graham

   JEANNE J. GRAHAM
   United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by September 5, 2007.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.